W. H. WICKERSHAM & CO., Inc., a corporation, Libelant,

v.

S.S. NICTRIC, her boilers, engines, tackle, apparel and furniture, Does I through V, inclusive, Respondents.

No. 1003–61.

United States District Court
S. D. California,
Central Division.

April 15, 1963.

Allan F. Bullard, San Pedro, Cal., for libelant and cross-respondent.

Lillick, Geary, McHose, Roethke & Myers, Kenneth E. Kulzick, Los Angeles, Cal., for respondent and cross-libelant, Compania Estrella Blanca Limitada.

KUNZEL, District Judge.

The question here is whether the libelant, a ship's agent at Los Angeles Harbor, California, who acted for charterers, can recover in this In Rem action against the SS "NICTRIC", a time chartered vessel, for services rendered by a tug boat company for assisting the vessel to and from berth, for services of National Lines Bureau for berthing and unberthing the vessel, and for services of Crosby & Overton for cleaning holds and tanks.

The libelant also seeks recovery for an instrument company which repaired and calibrated the compass. In this connection the amount of $275.31 has been deposited in the registry by respondents as admittedly due and as lienable.

Respondent denies liability on the ground that the basic charter, paragraph 18, provides:

"Charterers will not suffer, nor permit to be continued, any lien or incumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel."

Libelant was first employed as agent for Paul X. Smith Company, Inc. of San Francisco, on March 5, 1961, Smith Company being a voyage charterer of the respondent vessel from Oceanica Ltd. as time charterer from Time and Freight Chartering Corporation (hereinafter called Time Chartering), which in turn was a time charterer from the owners, Cia. Estrella Blanca, Ltd. of Costa Rica. The intermediate charter from Time Chartering to Oceanica Ltd. was not introduced in evidence. Libelant was thereafter and before the vessel arrived, contacted by Time Chartering who requested that libelant protect their interests. Libelant received a copy of the voyage charter prior to the arrival of the vessel but did not receive a copy of the basic time charter. However, libelant was advised by Time Chartering that the vessel was sub-time chartered by it to Oceanica.

The vessel arrived at Los Angeles Harbor on March 27, 1961, and after discharging its cargo of copra, left for San Francisco on April 8, 1961, to engage in another voyage charter between Oceanica Ltd. and Bermuda Shipping Corporation, whereunder it was to transport scrap metal from San Francisco to Japan.

The basic charter is on standard "Government Form", "Approved by the New York Produce Exchange", and in addition to the quoted provision above forbidding liens, contains the usual provisions providing that the owners shall provide and pay for all provisions, wages of the crew, etc., and that the charterer shall provide and pay for all fuel, port charges, agencies, etc. Inasmuch as libelant was aware, prior to the arrival of the vessel, that the vessel was subject to a charter, and inasmuch as libelant failed to make any inquiry whatever relative to the terms of the charter, the libelant cannot recover for the services of the tug boat or the National Lines Bureau, by reason of the holding in the case of United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361 (1923).

The services for cleaning the holds and wells presents a different problem. An addendum to the basic charter provides:

"Crew to clean holds when requested by Charterers, but should this work not be permitted by Port Labour Rules Charterers to pay cost of shore labour."

It is conceded that the labor rules governing in the Southern California ports do not allow the cleaning of the holds

and wells by the crew when the ship is being unloaded. The testimony is that the time for the trip to San Francisco was to take from thirty to thirty-six hours, and that the cleaning could have been accomplished during this voyage.

After the Master was advised on March 29th by Time Chartering to have the crew clean the holds, the Master wrote to Time Chartering that there was not sufficient time on the voyage between Los Angeles and San Francisco for the crew to clean the holds. However, according to the manager of libelant, the Master stated that his crew was too tired to do any cleaning. Finally, upon Master's insistence and with the consent of Time Chartering, libelant ordered the cleaning done by Crosby & Overton.

Respondent contends that the cleaning was for the account of the basic charterer and that even though the cleaning may have been for the owners' account, the basic charterer could not subject the vessel to liens under the rule in the Carver case.

My view is that the cleaning was for owners' account inasmuch as the Master had refused to have the crew do the cleaning during the voyage from Los Angeles to San Francisco.

The rule in the Carver case does not prohibit liens against a vessel for services furnished the vessel which under the terms of the charter are for the owners' account.

The facts in the Carver case as set forth in the memorandum decision of the Circuit Court of Appeals for the Second Circuit, 292 F. 1017, shows that the vessels in question were in possession of the charterer with an option to purchase the vessels. Supplies were furnished the vessels by libelants upon order of an agent of charterer. No inquiry was made by libelants as to the terms of the charter. The charter, in substance, provided that the operation of the vessels were to be at charterer's sole expense, including the employment of the masters. The charter also included a provision containing the same language as the charter here in question, forbidding the charterer to incur liens upon the vessels.

 Here, although the cleaning was ordered by the charterer's agent, it was done at the request of the Master, an employee of owners, who refused to have his crew perform the function required of it to be performed under the terms of the charter.

In the circumstances, the decree shall be for libelant in the amount of $2,973.92, the cost of cleaning, and shall also be against cross-libelant and in favor of cross-respondent.

This memorandum opinion shall constitute the findings of fact and conclusions of law, and libelant shall prepare, serve and lodge a decree in accordance herewith.